THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee v.
JOSEPH CEDILLO, Defendant-Appellant.

Second District   No. 84—0906

Opinion filed April 22, 1986

G. Joseph Weller and Mary Kay Schick, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (William L. Browers and Dale M. Wood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:
In a jury trial defendant, Joseph Cedillo, was convicted of the of-

fenses of unlawful possession of cannabis, unlawful possession of cocaine, and unlawful possession with intent to deliver cocaine, in violation of section 4(b) of the Cannabis Control Act (Ill. Rev. Stat. 1983, ch. 56½, par. 704(b)) and sections 402(b) and 401(c) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, pars. 1402(b), 1401(c)), respectively. The circuit court vacated the conviction for unlawful possession of cocaine and sentenced defendant on the remaining counts to concurrent terms of 3 and 3½ years' imprisonment. On appeal, defendant contends that (1) the prosecutor intimidated a codefendant, who was a prospective defense witness; (2) the circuit court erred in barring the codefendant from testifying once he had indicated his intention to invoke his privilege against self-incrimination; and (3) he was denied effective assistance of counsel in that a conflict of interest arose from his attorney's representation of the codefendant.

On February 4, 1984, defendant, Steven Volness, and Jackson Summers were charged with unlawful possession of cocaine and unlawful possession of cannabis. On February 27, 1984, Keith Brown, of the law firm of Miller, Feda and Barbosa, entered his appearance on behalf of the defendant and Jackson Summers and informed the court that he did not perceive any conflict of interest. On April 27, 1984, attorney Manuel Barbosa appeared before the court and moved for leave to withdraw as counsel, alleging that, plea negotiations having been unsuccessful, there existed a conflict of interest in his representation of either defendant. Barbosa explained that if one of his clients pleaded guilty and the other proceeded to trial, he would be unable to call one client as a witness on behalf of the other. The court permitted Barbosa to withdraw from representing one of the defendants, whereupon he withdrew as counsel for Summers, for whom the public defender was appointed. On May 10, Summers pleaded guilty to unlawful possession of cocaine. At the plea proceedings, Summers stipulated under oath that he and the defendant had acted jointly in possessing and processing the cocaine.

On May 17, the prosecutor informed the court that the State had revoke its plea offer and was ready for trial. Barbosa again moved to withdraw, alleging that he and the defendant disagreed as to how the case should proceed and that defendant was unable to retain him for purposes of a jury trial. On defendant's indication that he neither wished to represent himself nor was able to retain other counsel, the court denied Barbosa's motion to withdraw.

Thereafter, the State amended the charges against defendant to include the offense of possession with intent to deliver cocaine. When the case came on for trial, the prosecutor informed the court that he

had interviewed Summers, whom the defense had listed as a prospective witness, and that Summers' version of the offense appeared to be contrary to his stipulation at the plea proceedings. The prosecutor stated that if Summers testified as he had indicated, he would be charged with perjury. The court appointed the public defender to advise Summers, whereupon, *in camera*, Summers indicated that if called to testify he would invoke his right against self-incrimination. Over attorney Barbosa's objection, the court barred Summers from taking the stand.

At trial, Detectives Stevens and Gonzales testified that on February 3, 1984, they executed a search warrant at the residence of Steven Volness, where they found defendant and Jackson Summers in an upstairs bedroom. The detectives testified that upon entering the room they saw defendant bending over a dresser, facing a small scale and holding a small knife in his right hand. Summers stood at the dresser, his hands positioned up near the scale. The officers seized a scale with a piece of paper and some white powder on it, a small lockblade knife with white residue on it, folded paper containing white powder, a baggie containing white powder, a green leafy substance, and a box of baggies. The crime lab confirmed that the white powder was cocaine mixed with sugar and that the green leafy substance was cannabis.

Defendant testified that he went to Volness' residence on February 3 in order to catch a ride to work. Volness invited defendant and Summers upstairs to show them something. Inside the bedroom defendant saw some white powder and had bent over to look at it when the police entered the room. Defendant admitted he knew the substances on the dresser were drugs but denied touching anything on the dresser, purchasing or handling any drugs.

■ We first address defendant's contention that the prosecutor intimidated Jackson Summers, who was a prospective defense witness. The record shows that Summers pleaded guilty before defendant's case went to trial and that he did not testify at defendant's trial, having invoked his right against self-incrimination.

Defendant contends it was the prosecutor's conduct that occasioned the unavailability of Summers as a defense witness. Generally, substantial governmental interference with a defense witness' desire to testify violates a defendant's right to due process. (*People v. Bailey* (1985), 132 Ill. App. 3d 399, 407, 476 N.E.2d 1360, *appeal denied* (1985), 108 Ill. 2d 573.) However, in the present case, defendant has not shown that the prosecutor intimidated the defense witness. It is not improper for the prosecutor to advise a witness of the penalties for perjury (*People v. Eubank* (1970), 46 Ill. 2d 383, 392, 263 N.E.2d 869, *cert. denied* (1971),

402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1657), and there is no proof here that Summers' plea was coerced in order to dissuade him from testifying on defendant's behalf. (See *People v. Bailey* (1985), 132 Ill. App. 3d 399, 407-08, 476 N.E.2d 1360, *appeal denied* (1985), 108 Ill. 2d 573.) Finding no violation of defendant's right to call witnesses on his behalf, we decline to reverse defendant's convictions on this ground.

Defendant also argues that the circuit court erred in barring Summers from testifying once Summers had indicated he intended to invoke his privilege against self-incrimination. This contention was addressed in *People v. Nally* (1985), 134 Ill. App. 3d 865, 869-70, 480 N.E.2d 1373, *appeal denied* (1985), 108 Ill. 2d 582, and rejected. We find *Nally* dispositive and hold the circuit court did not err in its ruling.

■ Last, we address defendant's contention that he was denied effective assistance of counsel in that a conflict of interest arose from his attorney's representation of Jackson Summers and the defendant. The record shows that initially attorney Barbosa entered his appearance on behalf of both defendant and Summers but withdrew from representing Summers before he pleaded guilty. Defendant contends that a *per se* conflict of interest arose because there was a possibility that Summers might have been called as a witness at defendant's trial.

The Illinois Supreme Court has distinguished between circumstances where counsel represented multiple defendants and where defense counsel had a commitment to some other person or cause adverse to a defendant's interest. (*People v. Washington* (1984), 101 Ill. 2d 104, 112, 461 N.E.2d 393.) Joint representation of codefendants is not *per se* violative of the right to effective assistance of counsel (*People v. Cunningham* (1985), 107 Ill. 2d 143, 148, 481 N.E.2d 722; *People v. Nelson* (1980), 82 Ill. 2d 67, 72, 411 N.E.2d 261; *People v. Malone* (1983), 114 Ill. App. 3d 55, 63, 448 N.E.2d 562) because a possible conflict inheres in almost every instance of multiple representation (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 348, 64 L. Ed. 2d 333, 346, 100 S. Ct. 1708, 1718). In such a case, defendant has the burden of showing an actual conflict of interest manifested at trial in order to claim a denial of effective assistance of counsel. (*People v. Robinson* (1979), 79 Ill. 2d 147, 169, 402 N.E.2d 157; *People v. Strohl* (1983), 118 Ill. App. 3d 1084, 1092, 456 N.E.2d 276, *appeal denied* (1984), 96 Ill. 2d 570.) In the present case, the charges against Summers and the defendant arose from the same occurrence and the cases were sufficiently interrelated to warrant application of the rule governing joint representation.

■ There was no *per se* conflict of interest, since Barbosa had terminated his representation of Summers before defendant's trial commenced. Moreover, Summers refused to testify, thereby eliminating the

possibility of conflict.

Nor has this defendant shown an actual conflict of interest manifested at trial. We are not persuaded that Barbosa's representation of Summers affected his representation of the defendant at trial, especially since Barbosa had not represented Summers regarding his guilty plea which had given rise to Summers' invocation of his right against self-incrimination. Nothing Barbosa did as defense counsel caused the loss of this witness' testimony; Summers' own actions kept him from testifying. Thus, counsel never faced the problem of challenging or presenting evidence which might favor one client but injure another. (*People v. Cowherd* (1978), 63 Ill. App. 3d 229, 233, 380 N.E.2d 21.) Since defendant has not shown that there was an actual conflict of interest arising from Barbosa's joint representation of Summers and the defendant, we conclude that he was not denied effective representation of counsel.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.