THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL J. SCHAEFER, Defendant-Appellant.

Third District    No. 3—88—0502

Opinion filed August 24, 1989.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

Gary L. Spencer, State's Attorney, of Morrison (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE WOMBACHER delivered the opinion of the court:

Following a bench trial, the defendant, Michael J. Schaefer, was convicted of unlawful possession of a controlled substance and unlawful possession of a controlled substance with the intent to deliver (Ill. Rev. Stat. 1987, ch. 56½, pars. 1402(b), 1401(b)(2)). The trial court sentenced him to five years in prison. He appeals.

The record reveals that the defendant and codefendants Peggy Dublo and Cynthia Sterenberg were charged by the same information.

On February 1, 1988, the court appointed Public Defender Albert Schmidt to represent the defendant. Schmidt subsequently represented both the defendant and codefendant Dublo at a preliminary hearing on February 4 and at arraignment on February 10. The record shows that Assistant Public Defender Michael Albert represented codefendant Dublo at all further proceedings, while Schmidt continued representing the defendant.

The evidence at trial established that the defendant, Dublo, and Sterenberg lived at the same residence in Morrison, Illinois. Police officer Andy Widener testified that he executed a search warrant at the residence on January 30, 1988. Upon entering the living room of the house, he observed the defendant sitting on the couch and Dublo lying on the floor. Underneath the couch, Widener found 23 paper packets which contained 4.6 grams of a white powdery substance that later tested positive for the presence of cocaine. Also under the couch, Widener found two scales and a Sucrets box which contained 0.8 grams of a white substance that later tested positive for the presence of cocaine. In addition to the items found under the couch, Widener seized several items from the defendant's upstairs bedroom. On the defendant's stereo speaker, Widener found 4.1 grams of cocaine. On a shelf in the defendant's bedroom closet, Widener discovered an unspecified amount of cocaine in a white, paper packet. In all, the police seized 9.7 grams of cocaine during the search.

Douglas Fowler, who lived directly across the street from the defendant, testified that during December of 1987 and January of 1988 he had observed suspicious activity at the defendant's residence. He stated that on the weekends cars would park in front of the defendant's house. From each car, one of the occupants would go into the house for about two or three minutes, then return to the car and drive away. On January 30, 1988, this had occurred nine times before the police conducted the search. Fowler stated that it was never the same car on any of the occasions. He believed that the cars would only stop if the front drapes of the house were 12 inches apart. If they were completely opened or closed, no cars would stop.

Codefendant Cynthia Sterenberg testified on behalf of the State that in December of 1987 she had seen a mirror on the dining room table near where the defendant and a person named Rick Westendorf were sitting. She believed the two men were "doing coke." Sterenberg further testified that she warned Westendorf and the defendant not to bring drugs into the house.

Codefendant Peggy Dublo also testified on the State's behalf. She stated that she saw cocaine in the house only once from the time she

moved into the residence until the day the search warrant was executed. The cocaine was on the dining room table closest to Westendorf, who frequently stayed at the house. Sometime after she saw the cocaine, she told Westendorf to stop bringing drugs into the house. Dublo further stated that she heard Sterenberg yelling at Westendorf about the cocaine. However, Dublo did not know if Sterenberg's comments were also directed at the defendant. Dublo testified that during the execution of the warrant the defendant stated that there was cocaine in the house and that they were going to get into trouble for it.

The defendant testified that the cocaine found in the Sucrets container was his. He further admitted that he had told Dublo during the execution of the search warrant that there was cocaine in the house. He stated that the 23 packets of cocaine found under the couch were not his and that they belonged to Westendorf. Regarding the cocaine found in his bedroom, the defendant claimed that he did not know it was there or how it had gotten there. He testified that Westendorf had used his house to package cocaine. He further stated that Westendorf did not make a habit of packaging cocaine there after Sterenberg and Dublo told Westendorf not to bring cocaine into the house.

On appeal, the defendant argues that he was denied his right to the effective assistance of counsel. He contends that his counsel labored under a conflict of interest because of his previous representation of codefendant Dublo, who testified as a State witness at the defendant's trial. The State initially argues that the defendant has waived this issue by failing to bring it to the attention of the trial court and by failing to adequately preserve the record.

We find that the instant issue has not been waived since no post-trial review of the alleged conflict was conducted by an independent attorney. (*People v. Kloiber* (1981), 95 Ill. App. 3d 1061, 420 N.E.2d 870.) We further find that the record has been adequately preserved in this case.

Turning to the merits, we note that it is fundamental that persons accused of a crime enjoy a sixth amendment right to the effective assistance of counsel. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708.) Effective assistance means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations. *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393.

The Illinois Supreme Court in *People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30, recently had occasion to examine the relevant case law regarding attorney conflicts of interest. The *Spreitzer* court noted the existence of a *per se* conflict of interest rule applica-

ble to cases where defense counsel has a tie to a person or entity who would benefit from a verdict against the defendant. In these types of cases the defendant, in order to secure a reversal of his conviction, need not show that his attorney's actual performance was in any way affected by the existence of the conflict. *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393.

■ On the other hand, the *Spreitzer* court also noted a second class of alleged conflicts to which the *per se* rule does not apply. These conflicts have generally, although not exclusively, involved joint or multiple representation of codefendants. Multiple representation cases are not treated as creating a *per se* conflict, because to do so would put an end to multiple representation altogether, since a possible conflict inheres in almost every instance of multiple representation. (*People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393.) In multiple representation cases, if the trial court is not apprised of the potential conflict, then reversal of the conviction will only be had upon a showing that an actual conflict of interest adversely affected counsel's performance. This means that the defendant must point to some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict. (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30.) A defendant can show that a conflict of interest actually affected the adequacy of his representation by demonstrating that the joint representation of codefendants involved antagonistic or hostile defenses. (*People v. Nelson* (1980), 82 Ill. 2d 67, 411 N.E.2d 261; *People v. Howard* (1988), 166 Ill. App. 3d 328, 519 N.E.2d 982.) However, where no material hostility existed at trial between codefendants and the record presents no indication that the defense of either codefendant was inhibited by the joint representation, a reversal of a conviction is not required. *People v. Jones* (1988), 121 Ill. 2d 21, 520 N.E.2d 325.

Turning to the instant case, we find that it should be characterized as a multiple representation case since attorney Schmidt represented both the defendant and codefendant Dublo up until and including the arraignment. We also note that the alleged conflict in this case was not called to the attention of the trial court. Therefore, we will analyze the alleged conflict under the standard of whether an actual conflict adversely affected defense counsel's performance. *People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30.

■ The defendant contends that a conflict of interest existed at trial because of the possibility that his counsel's ability to cross-examine and impeach Dublo was impeded by the ongoing duty to protect the prior attorney-client relationship. We recognize that a factor to be

considered in deciding whether an actual conflict existed is the possibility that privileged information obtained from a witness might be relevant to cross-examination. (*People v. Cunningham* (1985), 107 Ill. 2d 143, 481 N.E.2d 722.) However, it is also true that the mere possession of confidential information does not preclude an effective cross-examination of a codefendant witness; furthermore, the burden of demonstrating the existence and materiality of the alleged confidential information lies with the defendant. (*United States v. Jeffers* (7th Cir. 1975), 520 F.2d 1256.) Mere hypothetical or speculative conflicts will not suffice. *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157.

■ The defendant in the instant case offers only speculative and hypothetical ways in which his trial counsel's performance might have been affected. The record shows, however, that the defendant's trial counsel conducted an adequate cross-examination of codefendant Dublo. Further, Dublo offered no direct evidence incriminating the defendant which the defendant did not corroborate. In fact, much of Dublo's testimony supported the defendant's theory of innocence, which apparently was that Westendorf was responsible for bringing the cocaine into the house. This clearly was not a case where one defendant inculpated a codefendant in an attempt to exculpate himself. (See *People v. Howard* (1988), 166 Ill. App. 3d 328, 519 N.E.2d 982.) Accordingly, we find that the defendant has failed to show the requisite conflict of interest.

■ The defendant's second contention on appeal is that his conviction for unlawful possession of a controlled substance should be vacated because it is a lesser included offense of unlawful possession of a controlled substance with the intent to deliver. (See *People v. Martine* (1984), 121 Ill. App. 3d 793, 460 N.E.2d 456, *rev'd on other grounds* (1985), 106 Ill. 2d 429, 478 N.E.2d 262.) The State argues that the defendant has waived this issue.

We agree with the State that the defendant has waived this issue by raising it for the first time on appeal. We further find that no plain error was involved. See *People v. Boastick* (1986), 140 Ill. App. 3d 78, 488 N.E.2d 326.

■ The defendant's third argument on appeal is that the trial court erred in imposing a street value fine of $1,332 against him, because there was no evidence presented by the State as to the purity of the cocaine. He argues that section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—9—1.1) requires evidence establishing the purity of the controlled substance involved in the particular case before the court may impose a street value fine.

*People v. Carrasquilla* (1988), 167 Ill. App. 3d 1069, 522 N.E.2d 139.

We note that although the defendant contested the amount of the fine in the instant case, he did not claim at the sentencing hearing that the State was required to present evidence of the purity of the cocaine. It is axiomatic that alleged errors in sentencing must be brought to the trial judge's attention or the errors are deemed waived on appeal. (*People v. Fisher* (1985), 135 Ill. App. 3d 502, 481 N.E.2d 1233.) Accordingly, we find that the defendant has waived any error in the imposition of the street value fine.

For the foregoing reasons, we affirm the judgment of the circuit court of Whiteside County.

Affirmed.

HEIPLE and SCOTT, JJ., concur.