THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DIANE JAMES, Defendant (James A. James, Defendant-Appellant).

First District (5th Division)   No. 1—90—1817

Opinion filed May 8, 1992.—Rehearing denied September 10, 1992.

Alan D. Goldberg, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant James A. James and codefendant Diane James (defendant's wife) were charged by indictment with two counts of controlled substance offenses. After their trial began, the court held a plea bargaining conference pursuant to which (1) defendant pled

guilty to possession of over 15 grams of a controlled substance with intent to deliver and (2) codefendant pled guilty to possession of less than 15 grams of a controlled substance. The trial court, after admonishing both defendants, sentenced defendant to six years' imprisonment and codefendant to 18 months' probation. Defendant then filed in the trial court a written motion to vacate his guilty plea but did not file a certificate as required by Supreme Court Rule 604(d) (134 Ill. 2d R. 604(d)). The trial court, after a full hearing, denied the motion and defendant appealed. We consider the following issues: (1) whether defendant is entitled to a new hearing on his motion to vacate his guilty plea where defense counsel failed to file a certificate as required by Supreme Court Rule 604(d) (134 Ill. 2d R. 604(d)); (2) whether defendant is entitled to the vacation of his guilty plea in light of the trial court's incomplete admonishments pursuant to Supreme Court Rule 402(a)(2) (134 Ill. 2d R. 402(a)(2)); (3) whether defendant is entitled to the vacation of his guilty plea in light of the factual basis of the plea pursuant to Supreme Court Rule 402(c) (134 Ill. 2d R. 402(c)); and (4) whether defendant is entitled to a new trial where his trial counsel allegedly acted under a conflict of interest.

Relevant to our disposition are the following facts as disclosed by the record. James A. James (defendant) and his wife, Diane James (codefendant), were charged by indictment with one count of possession of more than 15 grams of heroin with intent to deliver and with a second count of possession of more than 15 grams of heroin. The two were tried together and were represented by the same private attorney, Robert Novelle (Novelle).

Before trial, both defendant and codefendant waived their right to a jury trial. Both pled not guilty. Neither objected to the joint representation by Novelle.

At trial, the State called two police officers. John Backshis, an officer with the Northeastern Metropolitan Enforcement Group, testified to all of the following. After an informant made a "controlled buy" from codefendant, a search warrant was issued in her name. On April 26, 1988, Backshis and fellow officers went to 3645 South 53rd Street in Chicago to execute the warrant. Defendant and codefendant were seated on couches in the living room when the officers arrived. The officers recovered from codefendant's pocket a tin film case containing 17 balloons; one of the balloons contained a quantity of a brown, rock-like substance. Under the cushion where codefendant was seated the officers recovered two larger balloons and $1,178 in cash. Under a cushion where defendant was seated

the officers recovered a loaded gun and a box of shells. About 56 small balloons containing brown powder were found in a sugar bowl in the kitchen.

The officers recovered a utility bill and cable television bill both of which listed codefendant's name and the same address on the search warrant. The officers recovered a 1987 Internal Revenue Service form and an Illinois unemployment insurance waiver form both of which listed defendant's name and the same address on the search warrant. At the time of his arrest, defendant stated to the officers that his address was the same address listed in the search warrant.

On cross-examination, Novelle questioned Backshis at length about the following facts pertaining to defendant: defendant's name was not on the search warrant; no drugs were found on the person of defendant; the utility and cable bills for the residence, both representing several months of service charges, listed codefendant's name and did not list defendant's name; and the officers ran a "leads check" the night before the search which indicated that defendant had a different address.

The State also called Officer Gary Gerdzunas of the Cicero police department. Gerdzunas' testimony recounted the items recovered in the search. Novelle did not cross-examine Gerdzunas. The proceedings were then continued to a future date to allow the State to call a police chemist.

The following month, on December 19, 1989, the parties appeared before the court and Novelle immediately requested a conference with the court. Novelle informed the court that defendant would withdraw his previously entered plea of not guilty and enter a plea of guilty to the indictment. Novelle further informed the court that codefendant would withdraw her previously entered plea of not guilty and, pursuant to an amendment of the indictment, enter a plea of guilty only as to possession of less than 15 grams of a controlled substance. In exchange for the guilty pleas, the State recommended a sentence of six years' imprisonment for defendant and 18 months' probation for codefendant.

The court asked each defendant if he or she was under the influence of drugs or alcohol and each answered "no." The court asked if each understood the plea agreement and each answered "yes." The court then admonished defendant and codefendant. The court specifically admonished defendant with the following: the nature of the charge against him; the charge was a Class X felony with a minimum sentence of six years and a maximum sentence of

30 years; that by pleading guilty defendant was giving up certain constitutional rights; and that the court was not required to accept the guilty plea. The record does not show, however, that the court admonished defendant that a Class X felony requires a mandatory supervised release term of three years in addition to a prison sentence.

The court then questioned defendant if anybody had threatened him or promised him anything in order to induce him to plead guilty. Defendant answered "no." At this point, Novelle stipulated to venue, jurisdiction, and the sufficiency of the charges. The court, however, specifically requested that the assistant State's Attorney provide an offer of proof to support the factual basis for the pleas. Novelle then stipulated to the testimony of Officer Backshis and to the test results of the police chemist which had determined that the balloons recovered in codefendant's pocket contained 7.4 grams of heroin, the two larger balloons found under her cushion contained 1.7 grams of heroin and the balloons found in the sugar bowl contained 7.8 grams of heroin. The court asked each defendant if he or she wished to make a statement and each answered "no." The court then accepted the guilty pleas and entered the recommended sentences. Finally, the court explained to each defendant his or her right to appeal; each defendant also read and signed an acknowledgment form pursuant to Supreme Court Rule 605(b) (134 Ill. 2d R. 605(b)).

Subsequently, the defendant called a hearing and requested the trial court to appoint a public defender for the purpose of filing a motion to vacate his guilty plea. We note that during this hearing, the assistant State's Attorney made the following comment concerning the plea bargaining: "[W]herein part and parcel of the agreement was that the defendant James James was taking six years in the Illinois Department of Corrections; and the codefendant, I believe it was a package deal, she received eighteen months felony probation; and the State reduced the case in light of a long series of conferences in the middle of a bench trial." At any rate, the court granted defendant's request and appointed a public defender, Adam Stillo.

Stillo filed a written motion to vacate defendant's guilty plea. Stillo did not, however, file a certificate pursuant to Supreme Court Rule 604(d) (134 Ill. 2d R. 604(d)). The written motion alleged that "there was not a factual basis for the plea" and that "the plea was not freely and voluntarily made." Stillo filed a written supplemental motion which added the allegation that defendant's trial attorney,

Novelle, acted under a conflict of interest. Defendant also filed his own affidavit in support of the motion. Paragraphs four and five of the affidavit stated:

"4. There was a conflict of interest in Mr. Novelle representing me, as Mr. Novelle told my wife, the codefendant, that I was going to be found not guilty, but she would be found guilty. However, in order to keep my wife from going to jail, I would need to plead guilty to the charges.

5. I pled guilty solely to keep my wife, the codefendant, from going to jail and not because I am truly guilty."

On May 8, 1990, the court convened for a hearing on defendant's motion to vacate his guilty plea. Defendant offered testimony which was limited to the veracity of his affidavit; no other witnesses, including Novelle, were called to testify. The attorneys then argued the motion. Stillo argued that there was an insufficient factual basis to hold defendant guilty of "more than a class one amount"; that there was no connection between defendant and the residence; and that Novelle had acted under a *per se* conflict of interest. The assistant State's Attorney responded that defendant at least had constructive possession of more than 15 grams of heroin; that defendant voluntarily pled guilty to the Class X felony; and that the forms recovered during the search provided the connection between defendant and the residence. Also, the assistant State's Attorney questioned whether the whole proceeding had been "the ultimate game playing by defendants." The assistant State's Attorney suggested that defendant believed he could vacate his guilty plea and the State would not reinstate the charges against his wife. We note that during rebuttal, Stillo characterized the conflict of interest: "It has to do with the fact that these two defendants changed their mind, and the conflict arose. That is the very bottom line."

The court denied the motion, finding that there was a sufficient factual basis for defendant's guilty plea; that Novelle did not act under a conflict of interest; and that defendant voluntarily and intelligently pled guilty. Defendant filed this appeal.

OPINION

We first address whether Stillo's failure to file a Rule 604(d) certificate requires that we remand this cause for a new hearing on defendant's motion to vacate his guilty plea. Rule 604(d) provides that no appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant files a written motion within 30 days

of the date on which the sentence is imposed. The rule also provides:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by mail or in person to ascertain his contentions of error in the entry of the plea of guilty, has examined the trial court file and the report of the proceedings of the plea of guilty, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." 134 Ill. 2d R. 604(d).

The supreme court in *People v. Wilk* (1988), 124 Ill. 2d 93, 529 N.E.2d 218, addressed the standard for applying Rule 604(d). Although the specific issue in *Wilk* concerned the failure to file a written motion under Rule 604(d) and not the failure to file a certificate, the court unequivocally stated: "At the risk of stating the obvious, it should be pointed out that the rules adopted by this court concerning criminal defendants and guilty pleas are in fact rules of procedure and not suggestions." (*Wilk*, 124 Ill. 2d at 103, 529 N.E.2d at 221.) The court went on to explain the elaborate history and purpose of the rules concerning guilty pleas. The court held that Rule 604(d) requires strict compliance, not merely substantial compliance; furthermore, strict compliance with the rule is a condition precedent to an appeal. Therefore, the court upheld the dismissal of the appeals by the defendants who failed to strictly comply with the rule. The court was careful to point out that its holding did not leave the defendants without a remedy for their counsel's failure to strictly comply with the rule. The appropriate remedy, the court stated, lies in our Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*) through a claim for ineffective assistance of counsel.

■ Applying *Wilk* to the instant case, we hold that Stillo's failure to file the certificate as required by Rule 604(d) fell short of the necessary strict compliance. Therefore, defendant failed to establish the condition precedent to appealing the motion to vacate his guilty plea and defendant must pursue his remedy by claiming ineffective assistance of counsel in his post-conviction proceedings.

We recognize that our holding conflicts with other appellate court opinions issued subsequent to *Wilk*. In *People v. Gabala* (1st Dist. 1991), 211 Ill. App. 3d 351, 570 N.E.2d 377, the court held that substantial compliance with Rule 604(d) is adequate under certain circumstances. We believe that this holding is contrary to the clear import of *Wilk*. Also, in *People v. Vickery* (3d Dist. 1991), 207

Ill. App. 3d 574, 566 N.E.2d 495, and *People v. Hayes* (5th Dist. 1990), 195 Ill. App. 3d 957, 553 N.E.2d 30, although the courts held that Rule 604(d) required strict compliance, the defendants were granted new hearings at the trial level due to their counsel's failure to file the certificate. We believe that these holdings are contrary to the supreme court's determination that a defendant's "appropriate remedy" lies in the Post-Conviction Hearing Act.

We next address defendant's claims under paragraphs (a) and (c) of Supreme Court Rule 402 (134 Ill. 2d R. 402). Before we address each paragraph, however, we note that Rule 402 begins with the following language: "In hearings on pleas of guilty, there must be substantial compliance with the following: ***." (134 Ill. 2d R. 402.) The express language of Rule 402, therefore, requires a different standard of compliance than Rule 604(d).

Defendant claims that his guilty plea should be vacated because the trial court violated paragraph (a) of Rule 402, which provides:

"(a) Admonitions to Defendant. The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences;

(3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and

(4) that if he pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him." (134 Ill. 2d R. 402(a).)

Specifically, defendant claims that he was not correctly admonished under paragraph (a)(2) because the trial court did not inform him that he would receive a mandatory supervised release term of three years in addition to the agreed upon six years' imprisonment.

■ The supreme court, however, has held that substantial compliance with Rule 402(a) exists even when a defendant is not admonished of a mandatory parole period where the following circumstances exist: the defendant understood what the recommended sentence would be in light of his guilty plea; defendant knew that the court was not bound to accept the recommendation and the

defendant knew that the court could sentence defendant according to the minimum and maximum sentences; and the sentence imposed along with the undisclosed mandatory parole period was less than the maximum to which defendant knew he could be sentenced. (*People v. McCoy* (1979), 74 Ill. 2d 398, 385 N.E.2d 696.) Here, the record clearly shows that defendant understood that the assistant State's Attorney would recommend a sentence of six years in light of his guilty plea; defendant knew that the court was not bound by the recommendation and defendant knew that the court could sentence him according to the minimum and maximum sentences; and the six-year sentence actually imposed along with the undisclosed three-year mandatory parole period was substantially less than the maximum sentence defendant could have received. Therefore, in light of this substantial compliance, defendant is not entitled to the vacation of his guilty plea pursuant to Rule 402(a)(2).

Defendant next claims that his guilty plea should be vacated pursuant to the factual basis requirement of Rule 402(c), which provides:

> "(c) Determining Factual Basis for Plea. The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea." (134 Ill. 2d R. 402(c).)

Specifically, defendant argues that there was insufficient proof connecting him to the premises in which the heroin was found and that there was insufficient evidence that he possessed more than 15 grams of heroin.

It is well settled that the measure of proof necessary to establish a factual basis for a plea is less than that required to sustain a conviction after a trial. (*People v. Royark* (1991), 215 Ill. App. 3d 255, 574 N.E.2d 1211.) The requirement that the court determine the factual basis for the plea is satisfied if there is a basis anywhere in the record from which the court could reasonably reach the conclusion that the defendant actually committed the acts with the intent required to constitute the offense to which the defendant is pleading guilty. *People v. Banks* (1991), 213 Ill. App. 3d 205, 571 N.E.2d 935.

Here, although a computer "leads check" indicated that defendant had a different address, there was a sufficient basis from which the court could reasonably conclude that defendant resided at that address: the police recovered an Internal Revenue Service form and an Illinois unemployment waiver form during the search both of which listed the defendant's name and the address which

was searched; and defendant himself told the officers at the time of his arrest that he resided at the premises with the codefendant.

We also believe that there was a sufficient basis in the record for the trial court to reasonably conclude that defendant constructively possessed more than 15 grams of heroin. The law on constructive possession provides:

> "Constructive possession exists without actual personal present dominion over the controlled substance but with an intent and capability to maintain control and dominion over it. [Citation.] As a result, narcotics being found on the premises under the control of defendant gives rise to an inference of knowledge and possession by him which alone may be sufficient to sustain a conviction for unlawful possession of controlled substances. [Citations.] Mere access by other persons to the area where drugs are found is insufficient to defeat a charge of constructive possession. [Citation.] Moreover, exclusive possession does not mean that possession may not be joint. [Citations.] If two or more people share immediate and exclusive control or share the intention and power to exercise control, then each has possession." (*People v. Scott* (1987), 152 Ill. App. 3d 868, 871, 505 N.E.2d 42, 44-45.)

Here, the search produced 7.8 grams of heroin from a sugar bowl in the kitchen, 1.7 grams of heroin beneath a seat cushion on which codefendant had been sitting, and 7.4 grams from a tin in codefendant's pocket. The presence of 16.9 grams of heroin on the premises under the joint control of defendant and codefendant gives rise to an inference of knowledge and possession sufficient to sustain a conviction for unlawful possession of more than 15 grams of heroin. We also believe there was sufficient evidence to establish defendant's intent to deliver.

Before we close our discussion of the issues under Rule 402, we note that defendant failed to specifically raise these issues in his motion to vacate the guilty plea. Supreme Court Rule 605 provides that in any appeal taken from a judgment on a plea of guilty, any issue or claim of error not raised in the motion is deemed waived. (134 Ill. 2d R. 605(b)(6).) Defendant thereby waived these issues. Also, we note that defense counsel stipulated to the sufficiency of the evidence during the guilty plea conference with the court.

We next address whether defense counsel (Novelle) acted under a conflict of interest by virtue of his dual representation of defendant and codefendant. It is well settled that in cases involving joint representation of codefendants, there is no *per se* conflict of inter-

est; defendants must show that an actual conflict of interest manifested itself at trial. *People v. Bradford* (1990), 198 Ill. App. 3d 717, 556 N.E.2d 289.

Defendant's brief argues, in part, that an actual conflict of interest existed because "independent counsel would not have suggested to a defendant whom he believed would be found not guilty that he plead guilty in order to keep another defendant from going to prison." In light of our discussion of constructive possession of narcotics, we find no basis for the proposition that defendant would have been found not guilty. Furthermore, even if we were to accept that defendant was less culpable than codefendant, "[a] conflict of interest is not established where a single attorney represents one codefendant who is allegedly more culpable than another codefendant." *People v. Sanders* (1991), 209 Ill. App. 3d 366, 375, 568 N.E.2d 200, 206, citing *People v. Jovicevic* (1978), 63 Ill. App. 3d 106, 379 N.E.2d 665.

Defendant's brief also argues that an actual conflict of interest existed because the "package deal" arranged by defense counsel "affected the voluntary nature of the guilty plea." We disagree. In *Politte v. United States* (7th Cir. 1988), 852 F.2d 924, the court held that a guilty plea is not inherently coercive merely because the government linked the defendant's plea with an arrangement of leniency for his wife. (Accord *Bontkowski v. United States* (7th Cir. 1988), 850 F.2d 306.) We are persuaded that this reasoning applies here.

In sum, we have considered the totality of the circumstances of the proceedings below and can find no evidence that defense counsel acted under an actual conflict of interest. Nor can we find evidence that defendant was coerced in any way to plead guilty. In fact, defense counsel stated that the conflict arose because "the two defendants changed their minds." We conclude, as did the court in *Politte*, that the disposition of defendant's case was the proper result of "calculated bargaining." *Politte*, 852 F.2d at 929.

For the reasons stated above, we affirm the judgment of the circuit court. As part of our judgment, we grant the State's request and assess defendant $50 as costs for this appeal.

Affirmed.

MURRAY and GORDON, JJ., concur.