THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FRANK J. SMITH, Defendant-Appellant.

Fifth District   No. 5—91—0187

Opinion filed August 9, 1993.

RARICK, J., dissenting.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Gerry Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MAAG delivered the opinion of the court:

The defendant, Frank J. Smith, pleaded guilty to burglary in two separate cases and to felony theft in a third case.

On appeal, he only contends that he must be allowed to file a new motion, pursuant to Supreme Court Rule 604(d) (134 Ill. 2d R. 604(d)), to withdraw his guilty pleas, because defense counsel did not comply with the spirit and purpose of Rule 604(d) and because defendant was not furnished with a copy of the guilty plea transcript in accordance with Rule 604(d).

In St. Clair County No. 89—CF—890, defendant was charged with burglary. On December 14, 1989, he pleaded guilty to burglary, and on February 8, 1990, he was sentenced to two years' probation.

On August 24, 1990, defendant was charged with burglary in St. Clair County No. 90—CF—793.

On December 31, 1990, defendant was charged with burglary in St. Clair County No. 90—CF—1377. On January 7, 1991, in No. 89—CF—890, the State filed a petition to revoke probation which alleged that defendant had committed burglary.

On February 7, 1991, the State amended the charge in No. 90—CF—793 to felony theft and agreed to recommend concurrent three-year sentences in No. 89—CF—890 and 90—CF—1377 and to recommend a consecutive sentence of 30 months' imprisonment in No. 90—CF—793. Defendant agreed to plead guilty to burglary in No. 90—CF—1377 and to felony theft in No. 90—CF—793. He further agreed to admit the violation of probation in No. 89—CF—890. The court accepted the guilty pleas and the admission to violating probation and sentenced defendant in accordance with the guilty plea agreement.

On February 8, 1991, defendant wrote a letter to the court in which he alleged that he had not been properly represented by the assistant public defender, Brian Trentman. The court appointed another attorney, Lloyd Cueto, to represent defendant.

On February 19, 1991, appointed counsel filed a motion to withdraw the guilty pleas or, in the alternative, to modify the sentences. The motion alleges that defendant did not fully comprehend or understand the admonishments of the court prior to pleading guilty and that the sentences are excessive. Stapled to the motion is a "certificate of counsel pursuant to Illinois Supreme Court Rule 604(d)" which states "[that counsel Cueto has] consulted with the defendant to ascertain his contentions of error in this cause; and that he has examined the trial court file and report of proceedings of the plea of guilty; and that defendant offers no amendments to the motion to withdraw guilty plea." The certificate was signed by counsel.

On February 21, 1991, a hearing was held on defendant's motion. Counsel stated that he had reviewed the court file and had several discussions with defendant, which are the bases for filing the Rule 604(d) motion; however, counsel had not been able to review the transcript of the February 7 hearing. The court stated that neither the Rule 604(d) motion nor defendant's letter of February 8 appeared to raise any substantial issues concerning the court's Supreme Court Rule 402 (134 Ill. 2d R. 402) admonishments. The court ruled that it would hear defendant's testimony and, if necessary, ask the court reporter to transcribe the February 7 hearing.

Defendant testified that while confined in the county jail, he had been "jumped on a couple of times." Mr. Grear, the superintendent of the jail, asked him if he did not want to plead guilty, make a deal, and

get out of the jail. Defendant responded that he would like to do the foregoing. That evening at approximately 6 p.m., Brian Trentman, defendant's trial counsel, came to the jail and talked to him for 5 or 10 minutes, during which he was informed of the plea agreement. The next day he was called to go to court, although prior to that time he did not know that he was going to court. Trentman told him to either accept the plea agreement now or receive more prison time later. At that time, defendant was "scared," "had problems," and had "a nervous condition." He did not know "what happened." Although Trentman had represented him for two or three months on various cases, defendant only talked with him for a total of 15 minutes. He admitted that he was out on bond on the first burglary offense and in "treatment" when he was charged with the second burglary offense.

During the cross-examination of the defendant by the assistant State's Attorney, the court informed defense counsel that the transcript of the February 7 hearing had been prepared.

The cross-examination continued, and the defendant further testified that he did not understand what was occurring at the plea proceedings, as "everything moved too fast." Defendant acknowledged that on February 7 he told the court that he understood the admonishments; however, the decision to plead guilty was forced on him by Trentman and by Grear. Although defendant admitted that he had been charged with approximately 30 traffic or misdemeanor offenses since 1980, he stated he had no general knowledge of his rights or of the court system. Defendant maintained that in spite of the trial court's lengthy admonishments on February 7, he did not understand his rights prior to pleading guilty.

After the completion of the cross-examination of defendant, the court stated that during the testimony of defendant it had the clerk contact the court reporter for the February 7 hearing. The court was in possession of the transcript, which lacked a cover and certification. Defense counsel had an opportunity to read through the transcript during defendant's testimony. The court asked defense counsel if he needed more time to review the transcript, and defense counsel stated, "No, your Honor, I've had ample opportunity." The court then asked defense counsel if his view of the transcript suggested any further questions of defendant, and defense counsel replied, "No."

The court then questioned defendant as to whether he remembered telling the court on February 7 that he understood the proceedings. Defendant replied that his mind was in a "flew state," and that Trentman had told him what to say prior to coming to court. When the court specifically asked defendant what he did not understand on

February 7, defendant replied: "I don't know"; "I don't understand"; and "I just did what I was told to do. That's all I could say. I just—everything was just—like just running through."

Brian Trentman, a part-time assistant public defender in St. Clair County, testified that he initially represented defendant after the petition to revoke probation in No. 89—CF—890 was filed. Trentman filed motions for bond in Nos. 89—CF—890 and 90—CF—793 which were granted. He asked Cheryl Probst to make a psychological evaluation of defendant, which Trentman reviewed. A tentative plea agreement was worked out with the State in which the State would ask for three years' imprisonment and the defendant could ask for probation coupled with drug or alcohol treatment; however, before the offer could be conveyed to defendant, he was arrested in No. 90—CF—1377. Trentman then related the State's offer of 5½ years' imprisonment. Trentman explained the agreement, the efforts to have him serve his sentences in a prison other than Menard, where defendant had been a guard, the strength of the State's cases, and good-conduct credit.

On February 7, defendant told Trentman that he did not want to plead guilty because he hoped the State would offer three year's imprisonment. Trentman explained that the State had put a deadline on the offer, that the offer would not get better, and that he would be sentenced to substantially more time if he went to trial. Defendant accepted the plea agreement and pleaded guilty. Trentman then filed a motion to dismiss numerous traffic cases pending against the defendant. Trentman talked with defendant at least five times during the period he represented him.

Trentman denied anyone from the jail contacted him concerning defendant and denied he told defendant how to answer the court's questions.

After hearing argument of counsel, the court stated it had read the February 7 transcript and had observed defense counsel read the transcript. A review of that transcript indicated that defendant was not confused, coerced, or under any mental infirmity. The court remembered that defendant appeared unhappy but did not appear confused. The court denied the motion to withdraw the pleas.

On appeal, defendant only contends that he should be allowed to file a new motion to withdraw his pleas, because the spirit and purpose of Rule 604(d) were not complied with where defense counsel was not furnished with a transcript of the guilty plea hearing until during defendant's testimony at the hearing on the motion to withdraw the pleas of guilty.

On February 21, 1991, at the time of the hearing on defendant's Rule 604(d) motion, Rule 604(d) provided:

"Appeal by Defendant From a Judgment Entered Upon a Plea of Guilty. No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to withdraw his plea of guilty and vacate the judgment. The motion shall be in writing and shall state the grounds therefor. When the motion is based on facts that do not appear of record it shall be supported by affidavit. The motion shall be presented promptly to the trial judge by whom the defendant was sentenced, and if that judge is then not sitting in the court in which the judgment was entered, then to the chief judge of the circuit, or to such other judge as the chief judge shall designate. The trial court shall then determine whether the defendant is represented by counsel, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel. If the defendant is indigent, the trial court shall order a copy of the transcript as provided in Rule 402(e) be furnished the defendant without cost. The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by mail or in person to ascertain his contentions of error in the entry of the plea of guilty, has examined the trial court file and report of proceedings of the plea of guilty, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." (134 Ill. 2d R. 604(d).)

Rule 604(d) must be strictly followed. (*People v. Wilk* (1988), 124 Ill. 2d 93, 103, 529 N.E.2d 218, 221; *People v. Hayes* (1990), 195 Ill. App. 3d 957, 961, 553 N.E.2d 30, 33; *People v. Mabry* (1991), 209 Ill. App. 3d 976, 977, 568 N.E.2d 473, 474.) The better procedure is for defense counsel to be provided with the transcript of the plea proceedings and of sentencing prior to the Rule 604(d) hearing in order that counsel have sufficient time to prepare a Rule 604(d) motion and for the hearing. However, Rule 604(d) does not *require* that the transcript be provided in advance of the hearing. On the facts of this case, we cannot find that Rule 604(d) was violated. During the hearing, counsel was supplied with a copy of the transcript of the February 7, 1991, negotiated plea proceedings. In response to the trial court questions, defense counsel stated that he had sufficient time to review the transcript and that an examination of the transcript did not suggest other questions to be asked defendant. Nothing in the record sug-

gests, as defendant contends, that attorney "Ĉueto ignored the cross-examination of defendant by the State" while reading the transcript. Further, defendant on appeal does not suggest what other questions the transcript might have suggested. This court holds that there was compliance with Rule 604(d).

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

CHAPMAN, P.J., concurs.

JUSTICE RARICK, dissenting:

While the majority correctly notes that Rule 604(d) does not specifically require the transcript of the guilty plea proceedings be provided to defendant and his counsel in advance of the hearing on a motion to withdraw a guilty plea, I do not believe the procedure followed here complies with the spirit and purpose of Rule 604(d) as set out in *People v. Wilk* (1988), 124 Ill. 2d 93, 529 N.E.2d 218, and *People v. Hayes* (1990), 195 Ill. App. 3d 957, 553 N.E.2d 30. Therefore, I write this dissent. Transcribing and reading the report of proceedings during the hearing on the motion to withdraw a guilty plea does not permit either defendant or his counsel the opportunity to fully review the proceedings without distraction, prevents defense counsel from paying complete attention to the hearing at hand, and denies defendant and counsel the use of the report of such proceedings in formulating the motion to withdraw defendant's plea. Clearly this is not strict compliance with Rule 604(d). Defendant's interests certainly were not protected by the cavalier manner in which his hearing was conducted. I therefore believe defendant should be given the opportunity to file a new motion to withdraw his plea as well as the opportunity to be heard on that motion.